UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 07-20181-CIV-COOKE/BROWN

BURGER KING CORPORATION,

    *Plaintiff*,

vs.

E-Z EATING 8TH CORP., *et al.*,

    *Defendants*.

_____/

**ORDER ON MOTIONS FOR PRELIMINARY INJUNCTION**

This matter is before me on the parties' cross-motions for preliminary injunction. As stated in court on January 31, 2008, I am granting Burger King's motion and denying E-Z Eating's motion. E-Z Eating is one of Burger King's franchisees. Burger King has ceased supplying E-Z Eating with food, forcing E-Z Eating to shut down its restaurants. E-Z Eating requests that I enter a preliminary injunction requiring Burger King to once again supply food to E-Z Eating. The injunction E-Z Eating asks for is a request for a decree of specific performance. Florida law does not provide for specific performance of a franchise agreement. *Burger King Corp. v. Weaver*, 798 F.Supp. 684, 692 (S.D. Fla. 1992); *Burger Chef Sys., Inc. v. Burger Chef of Fla., Inc.*, 317 So. 2d 795, 797-98 (Fla. 4th DCA 1975).

On the other hand, Burger King requests that I enjoin E-Z Eating from using Burger King's registered trademarks and service marks subsequent to the termination of E-Z Eating's franchise agreements with Burger King. To obtain injunctive relief, a movant must show the following: (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed

injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) (citations omitted). Burger King has satisfied each element.

E-Z Eating owned and operated four Burger King restaurants. On July 21, 2005, Defendants entered into an Assistance Agreement with Burger King as a result of E-Z Eating's monetary defaults for past due royalty, advertising fees and other charges. Section VII(B) of the Assistance Agreement provides that the occurrence of an additional event of default after the date of the Assistance Agreement[1] under any of the franchise agreements constitutes an "Event of Default" under the Assistance Agreement. Section VIII further provides that the occurrence of an Event of Default under the Assistance Agreement "shall constitute an event of default under each and every Burger King Agreement, and shall automatically terminate each of the [f]ranchise [a]greements without further notice from BKC."

Under these facts, Burger King seems likely to succeed on both its Lanham Act claim and its breach of contract claim. Under the Assistance Agreement, Burger King had the right to terminate all of E-Z Eating's franchise agreements. Once the franchise agreements were terminated, the right to use Burger King's registered trademarks and service marks also terminated automatically. *See* Franchise Agreement at ¶ 18(B). Burger King will, therefore, succeed because, under the Franchise Agreement, E-Z Eating cannot continue operating as a Burger King restaurant.

The Lanham Act proscribes trademark infringement and prohibits false designations as to the source or origin of business establishments, services, and goods. *See* 15 U.S.C. §§ 1114, 1125(a). The Act "creates a claim for trademark infringement when a trademark holder can demonstrate that the use of its trademark by another is likely to confuse consumers as to the source of the product."

---

[1] The parties signed the Assistance Agreement on June 21, 2005.

*Home Box Office v. Showtime/The Movie Channel, Inc.*, 832 F.2d 1311, 1314 (2d Cir. 1987). When a terminated franchisee continues to use the former franchisor's trademarks, a strong risk of consumer confusion arises. *See Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir. 1983). Many courts have held that continued trademark use by one whose trademark license has been cancelled satisfies the likelihood of confusion test and constitutes trademark infringement. *See, e.g., United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 143 (3d Cir. 1981); *Prof'l Golfers Ass'n v. Bankers Life & Cas. Co.*, 514 F.2d 665, 670 (5th Cir. 1975); *Prompt Elec. Supply Co., Inc. v. Allen-Bradley Co.*, 492 F.Supp. 344, 349 (E.D.N.Y. 1980); *Nat'l Board of YWCA v. YWCA of Charleston, S.C.*, 335 F.Supp. 615, 628-29 (D.S.C. 1971). Accordingly, Burger King is likely to prevail on its Lanham Act claims.

Burger King also meets the remaining elements necessary for preliminary injunctive relief. This Circuit has held that "a sufficiently strong showing of likelihood of confusion caused by trademark infringement may by itself constitute a showing of . . . [a] substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1309 (11th Cir. 1998). Also, Burger King should not have to risk injury to its reputation by allowing E-Z Eating to continue operating as a Burger King restaurant when it was E-Z Eating who decided to close down two restaurants in contravention of the parties' agreements. *See Burger King Corp. v. Majeed*, 805 F.Supp. 994, 1006 (S.D. Fla. 1992) (finding that, since defendants had brought upon themselves the harm by not paying their contractual obligations, defendants harm was far outweighed by the immeasurable damage done to Burger King by the infringement of its trademarks). I, therefore, find that the threatened injury to Burger King outweighs any threatened harm to E-Z Eating. Lastly, the injunction would not be adverse to the public interest as it would prevent consumer confusion. *Id.*

Accordingly, Burger King's motion for preliminary injunction [D.E. 5 in Case No. 08-20155]

is granted and E-Z Eating's motion for preliminary injunction [D.E. 4 in Case No. 08-20203] is denied without prejudice.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of February 2008.

*(signature)*
MARCIA G. COOKE
United States District Judge

cc:
*The Honorable Stephen T. Brown*
*All counsel of record*